*Wm. Harrison*, attorney for plaintiff in error.

*J. L. Williams*, attorney for defendant in error.

---

## DERRY *v.* ROSS *et al.*

(*Supreme Court of Colorado, December Term, 1880.*)

EQUITY JURISDICTION—WILL ENJOIN TRESPASS TO MINING PROPERTY AND WATER RIGHTS—WHEN. Courts of equity will assume jurisdiction for the purpose of restraining acts of trespass to mining property and water rights, when the character and extent of the wrongful acts render the injury irremediable, or where an action at law would not afford adequate relief by reason of the insolvency of the defendant.

LEGAL AND EQUITABLE ISSUES—OBJECTION TO JURISDICTION, WHEN AVAILABLE; AND WHEN WAIVED IF NOT RAISED IN LOWER COURT. The ownership of a ditch and water right is a legal right, and when raised in a suit in equity, either party may demand a suspension of the equitable action until that issue shall have been determined in an action at law. But no objection to the jurisdiction being made, and the issue being submitted to the chancellor, the objection is waived, and cannot be raised on an appeal. The legal maxim that consent cannot confer jurisdiction, is mainly applicable to courts of special and limited powers. If the subject matter of the litigation be outside the pale of equity jurisdiction, and cannot possibly be brought within it, the objection to the jurisdiction may be taken at any time; but, in all other cases the rule is, that, if a party submit to jurisdiction without objection until the decree is entered, he has waived the question of jurisdiction, and cannot raise it in the appellate court. When the bill presents a matter cognizable in equity, and a legal issue is raised by

the answer, a submission of such issue to the judgment of the court is a waiver of the question of jurisdiction.

MINING CLAIM AND OWNERSHIP OF DITCH—ABANDONMENT OF. One who locates a mining claim and constructs a ditch, has certain possessory rights, which, as against all other claimants except the government, amount to title. But these rights may be divested by abandonment, as well as by sale or gift. Abandonment is a matter of intention, and operates instanter. When a miner gives up his claim and goes away from it, without any intention of re-possessing it, and regardless of what may become of it, or who may appropriate it, an abandonment takes place, and the property reverts to its original status as part of the unoccupied public domain; it is then *publici juris*, and open to location to the first comer. No subsequent sale by the former locator, in such case, after other rights have intervened, will convey any right or title to the grantee.

BECK, J.[1] A bill was filed in the district court of Lake county, by the appellees, on the 12th day of August, 1876, setting up, that they were in possession of a certain placer mine and ditch, in Willow gulch, in that county, which they had taken possession of and appropriated as abandoned property. That the mine was originally located, and the ditch constructed by Wesley Willett, James Willett and Samuel Hammett, in the year 1866, and that these parties had left and abandoned the property in 1872, and allowed it to become in a ruinous condition; that the complainants finding the premises abandoned, entered into possession, relocated the property, filed their location certificate in the recorder's office of Lake county, put the property in repair, and commenced mining operations; that they continued to work the mine in a profitable manner, using the water flowing through the ditch for that purpose, until the defendant, Derry, cut the ditch and diverted the water so as to compel them to suspend mining operations. Complainants entered into possession in August, 1875, and filed their location certificate for record on the 26th day of October following. The allegation in the bill as transcribed into the record is, that they took possession in August, 1876; but other portions of the bill, including the answer, show that the true date is August, 1875. The bill alleges that the appellant made no use of the water of the ditch, but wantonly and maliciously, at different times, cut the ditch and allowed the water to flow out and run to waste; that he first cut the ditch on June 1, 1876, and had since repeatedly cut and broken it, and threatened to continue these wrongful acts. It alleged the damages to be irreparable, and the defendant insolvent. The prayer

was for a temporary injunction, restraining the defendant from the acts complained of, and that upon a final hearing the injunction be made perpetual.

The temporary writ was granted, and one year afterwards, August 15, 1877, the appellant filed a demurrer to the bill, and at the same time a motion to dissolve the injunction. The bill was amended, and thereupon appellant filed an answer, setting up title in himself to the ditch and water. Exceptions being made and sustained to the answer, he filed an amended answer, denying the complainants' title to ditch and water, and claiming title in himself by prior appropriation of the water, and by purchase of the ditch from Wesley Willett, one of the original locators. To this answer a replication was filed, and the cause was then referred to a Master in Chancery to take testimony. Upon filing of the Master's report of testimony, the parties went into a final hearing of the cause upon the merits before the court; the court found the allegations of the bill to be true; that complainants were the owners of the property, and a decree was entered up in their favor, perpetually enjoining the appellee from interfering with the ditch. The principal errors assigned are, that the court did not have jurisdiction to try the cause and pronounce the decree, and that the decree was not warranted by the testimony.

We have no hesitation in saying that the allegations of the bill justified the issuing of the temporary writ of injunction. It is a common practice for courts of equity to assume jurisdiction of a cause of this nature, for the purposes of restraining acts of trespass to mining property and water rights, where the character and extent of the wrongful acts committed render the injury irremediable, or where an action at law would not afford an adequate remedy, by reason of the insolvency of the defendant. 2 Story's Eq. Jur., Secs. 928, 929; *Irwin* v. *Davidson*, 3 Iredell's Eq. Cases, 311; *United States* v. *Parrott*, 1 McAllister, C. C. 271; *Atchison* v. *Peterson*, 20 Wall., 515.

It is urged that the court below, sitting as a court of equity, had no jurisdiction to try the question of title, which was the main issue presented by the pleadings.

It is undoubtedly true that the ownership of the ditch and water was a question of legal right; when this issue was presented, the court might very properly have refused to proceed further until that issue should have been determined in an action at law.

No objection, however, appears to have been raised to the jurisdiction, and both parties voluntarily submitted to a trial of this issue before the court. Can the question of jurisdiction be now raised, for the first time, upon this appeal?

The legal maxim, that consent cannot confer jurisdiction, is mainly applicable to courts of special and limited powers. The jurisdiction of such courts cannot be extended by consent beyond the limit of the powers granted. Consent of parties would not authorize a justice of the peace to issue a writ of injunction, or to try and sentence a prisoner for the crime of arson or murder. Mr. Sedgwick, in his work upon the Construction of Statutory and Constitutional Law, p. 359, illustrates the proposition in this wise: "Thus, where an appeal is taken in a cause not appealable, or to a court not having jurisdiction, it is not in the power of the parties to confer jurisdiction by waiving all objections."

The maxim applies with equal force to a court of equity, when the subject matter of the litigation is wholly outside the pale of equity jurisdiction, and cannot be brought within it, either incidentally, or by the advent of circumstances.

It is the province of courts of equity to take cognizance of matters of account, trust, fraud, accident and mistake. They have concurrent jurisdiction with courts of law, when the latter courts, although courts of general jurisdiction, cannot give adequate relief, or, under the actual circumstances of the case, can give no relief at all; and, according to the classification of Mr. Story, and some other authors of works upon equity jurisdiction, they have also auxilliary or supplemental jurisdiction. As remarked in the case of *Miller* v. *Furse*, Bailey's Ch. R., 181, with very few exceptions there is no question of civil rights in matters of property that may not come within the jurisdiction of a court of equity.

Criminal matters, however, are wholly outside of equity powers, and no consent would confer on such court jurisdiction to try and punish persons for criminal offenses. Here is a palpable defect of jurisdiction, incapable of being cured, and if asserted would be usurpation, and the proceedings a nullity.

It is not the province of a court of equity to try causes where the relief prayed for is an award of damages, which can only be properly ascertained by the verdict of a jury; nor is it the province of such court to try legal titles. When, therefore, such issues arise in the progress of a cause, if the court does not of its

own motion remit the parties to an action at law, it is the privilege of the parties litigant to object to further proceedings in equity, until the legal issues are determined before a proper tribunal. 1 Story's Eq. Jur., Sec. 72; 2 Story's Eq. Jur., Sec. 925*d*; *Carlisle* v. *Cooper*, 6 C. E. Greene, 576; Gilbert's History and Practice of the Court of Chancery, p. 51.

If the subject matter of litigation be outside the pale of equity jurisdiction, and cannot possibly be brought within it, the objection to the jurisdiction can be taken at any time; but the rule is, in respect to all other cases, that if a party submit to the jurisdiction without objection until the decree is entered, he has waived the question of jurisdiction, and cannot raise it in the appellate court. *McDonald* v. *Crockett*, 2 McCord Ch., 135; *Ludlow* v. *Simond*, 2 Caines Cases, p. 37; *Burroughs* v. *McNeill*, 2 Devereux & Bat. Eq., 297; *Leroy* v. *Platt*, 4 Paige's Ch., 77; *Miller* v. *Furse*, Bailey's Ch., 181.

In the case at bar the subject matter of the litigation was within the jurisdiction of the court. Upon the face of the bill the court might properly have entered a decree perpetually enjoining the defendant from committing the acts complained of, and until the filing of the answer no purely legal issue arose. By submitting that issue to the judgment of the court, the appellee has waived the question of jurisdiction, and cannot now raise it. And since there was no palpable defect of jurisdiction, the error, if any, is cured.

In respect to the ruling of the court in sustaining the exceptions to the original answer of the defendant, we fail to see that defendant was deprived of any substantial right by this ruling. The same matters of defense were set up by him in an amended answer, and relied upon in the trial; and if any error was committed by the court in sustaining the exceptions, the defendant has waived it by pleading over.

Considering the case upon the merits, we are called upon to decide whether the decree is warranted by the evidence produced before the court. This presents the question of abandonment of the mining claim and ditch by the original proprietors. Willett and his co-tenants were the original appropriators of the placer mine and water rights; they constructed the ditch, and were in the actual occupancy of the property from 1870, or 1871, up to the latter part of 1872; during this time they were vested with cer-

tain possessory rights, which, as against all other claimants, except the government, amounted to title; this title was good and sufficient so long as they remained in possession and complied with the federal, state and local laws and regulations.

But these are rights which may be divested, either by sale, gift or abandoment; no sale or gift was made until long after the appropriation of the property by the appellees; it therefore only remains to inquire if the property was abandoned prior to such appropriation. Abandonment is a matter of intention, and operates instanter. When a miner gives up his claim and goes away from it, without any intention of re-possessing it, and regardless of what may become of it, or who may appropriate it, an abandonment takes place, and the property reverts to its original status as part of the unoccupied public domain. It is then *publici juris*, and open to location by the first comer; no subsequent sale by the former locator in such case, after other rights have intervened, will convey any right or title to the grantee, for his rights being wholly divested by the abandonment, he has none to convey. *Richardson* v. *McNulty*, 24 Cal., 339; *Davis* v. *Butler*, 6 Cal., 510.

The evidence shows that neither Wesley Willett, James Willett, nor Samuel Hammett occupied the property since 1872; nor is there any competent testimony showing that they ever authorized any one to look after the property for them, or to exercise any control over it. All that appears in the testimony about Stone, of Granite, acting for them, is hearsay. Stone was not a witness in the cause, and it appears that he was even ignorant of the residence of Willett, as he was unable to furnish the appellant his address when he desired to purchase the ditch.

The possession of Watt and McKay cannot be said to be the possession of Willett; they were not lessees, but appear to have worked on their own account, and for their own profit during their occupation of the premises; they likewise abandoned it prior to the entry of the appellees in August, 1875.

Appellant subsequently ascertained the address of Wesley Willett, who was in the state of Texas, and procured from him a deed of the ditch. In our view of the case, this deed is of no effect whatever; at the time of its execution Willett had no interest to convey.

In regard to the claim of the appellant, that he made a prior appropriation of the water, we have to say, that in our judgment,

the acts relied upon by him are not sufficient to constitute an appropriation of the water right in controversy.

Finding no substantial error in the record, the decree will be affirmed.

*G. W. Miller*, attorney for appellant.
*Thos. Macon, C. S. Thomas*, attorneys for appellee.

