COFFEE ET AL. v. EMIGH ET AL.

1. CROSS-VEINS — RIGHTS CHANGED BY CONTRACT — CONSIDERATION.— Rights to cross-veins may be changed by contract, and the settlement of a dispute between the owners of such veins, though ignorant of their legal rights, if entered into in good faith, is a sufficient consideration to support a voluntary agreement for the amicable adjustment of the controversy. The law upholds and favors such consideration.

2. POSSESSION — WHEN EVIDENCE OF NOTICE.— A purchaser of real property must take notice of the rights of those in possession when the circumstances of such possession are sufficient to put a reasonable person upon inquiry in respect thereto.

3. LACHES — PARTY IN POSSESSION NOT PREJUDICED BY.— In an action for specific performance relating to real property the doctrine of laches cannot be invoked by a party out of possession against a party in possession; and the latter is not prejudiced by delay in commencing suit so long as his possession is undisturbed.

4. CONTRACTS CERTAIN, FAIR, REASONABLE AND JUST.— When the contract upon which relief by specific performance is sought is certain, fair, reasonable and just, and is proved substantially as alleged, the same may be enforced by decree when both parties are able, if the plaintiff is ready and willing to perform it.

5. UNNECESSARY SUITS AND PLEADINGS TO BE AVOIDED.— The provisions of the code in reference to uniting causes of action are liberal. Suits should not be unnecessarily multiplied, and statements of fact in pleadings should be in ordinary and concise language, without unnecessary repetition.

*Error to District Court of Boulder County.*

THREE causes, involving claims by the same parties to the same mining property, were argued and submitted before this court at one hearing, with the understanding that they would be considered and disposed of together. The causes bear the same title and are numbered 2,213, 2,241 and 2,768 respectively.

The first cause is of the nature of an action of trespass *quare clausum fregit.* It was commenced in the court below in October, 1885, by Henry N. Coffey, Nelson K. Smith and John W. Blackburn, as plaintiffs, against Charles C. Emigh, as defendant. Subsequently Alpheus Jackson became a

co-defendant with Emigh. The allegations of the parties so far as they are necessary to an understanding of this opinion are in effect as follows:

Plaintiffs complaining allege that, at the commencement of said action, and for eleven years prior thereto, they were and had been the owners and in possession and entitled to the possession of the Western Slope lode, a parcel of mineral lands situate in Boulder county, Colorado, and they further allege that in September, 1885, defendants wrongfully and unlawfully entered upon said Western Slope lode against the consent of plaintiffs, while they were so in possession thereof, and dug, extracted, removed and carried away valuable ore therefrom.

Defendants answering admit the plaintiffs' ownership of the Western Slope lode, with certain exceptions, but deny the entry, trespass and damage as charged. Defendants further allege that they are and at the time of the alleged trespass were the owners of a certain parcel of mineral lands called the "Emancipation Lode," and that the location of the Emancipation lode crosses the location of the Western Slope lode almost at right angles; that the veins of the two locations are cross-veins; that defendants have a right of way through and across the Western Slope lode for the purpose of working the vein of the Emancipation lode; that they own in their own right all ore taken from the Emancipation vein between north and south side lines of the Western Slope location, except within the space of intersection of the two veins; that prior to and since September, 1885, they have worked the Emancipation vein beneath the surface of the Western Slope location, and within the boundaries of the Emancipation location, but have not touched the vein of the Western Slope location within its side or end lines.

Plaintiffs replying, among other things, allege that in January, 1880, there was a dispute and controversy existing between the owners of the Western Slope lode and the owners of the Emancipation lode as to the ownership of

the Emancipation vein where the same crosses the territory of the Western Slope lode claim; that, for the purpose of settling such dispute and controversy, the owners of said claims entered into a written agreement whereby it was mutually and definitely agreed that a certain portion of the intersecting territory of the two claims should be owned and possessed by the Western Slope owners and a certain portion by the Emancipation owners respectively; and that the several owners entered into and took immediate possession of their several and separate portions as described in said written agreement, and have owned, possessed and occupied the same continuously by themselves or their several grantees successively until the committing of the trespass complained of in September, 1885; that said trespass was committed upon that portion of the Western Slope territory crossed by the Emancipation territory as aforesaid, not within the space of intersection of the said cross-veins, but within that portion which by the written agreement was to be owned and possessed, and which was at the time of said trespass owned and possessed, by plaintiffs as owners of the Western Slope lode claim; and that defendants well knew of the existence and terms of the said written agreement, and of the rights of the several parties thereunder, at and before they acquired any interest in the said Emancipation lode claim.

The foregoing portion of plaintiffs' replication was struck out on motion of defendants, and on the trial evidence of the alleged written contract was disregarded.

The next record discloses an action for specific performance. It shows that in June, 1886, the same plaintiffs commenced an action against the same defendants based substantially upon the matters struck from their replication as above set forth. The complaint states more circumstantially the making of the written agreement for the purpose of adjusting and forever settling the controversy as to the conflicting territory of the Western Slope and Emancipation lodes; it alleges the taking of open, notorious, peace-

able and undisputed possession of the several portions of
the conflicting territory thus divided, and the continuous
occupation and possession thereof by the several parties,
according to the terms of said written agreement, from and
after January, 1880; it alleges also that the parties agreed
to perfect said written agreement by proper deeds of con-
veyance at as early a day as practicable; and also avers
that plaintiffs are and ever have been ready, able and will-
ing to convey according to the terms of said written agree-
ment; and concludes with the prayer that defendants may
be required to specifically perform such contract by execut-
ing proper conveyances, etc.

The third record appears to be in the nature of an action
of ejectment. It seems to have been originally a part of
the trespass suit, but by order of the district court was
separated therefrom, and given a different number, and was
tried and determined separately. It is brought to this court
as a distinct suit on error.

On the trial of the action for specific performance the
court below submitted certain interrogatories to a jury,
who found in response thereto that the owners of the
Emancipation lode did, about January 1, 1880, enter into a
contract in writing with the owners of the Western Slope
lode, which writing was signed by all the parties, in which
it was agreed that the portion of the vein of the Emancipa-
tion included within the side lines of the Western Slope
should be divided as follows: The first fifty feet north of
the south side line of the Western Slope to belong to the
owners of the Emancipation, and the balance to belong to
the owners of the Western Slope; and that the parties
should exchange deeds in the fulfillment of said agreement
as soon as they respectively acquired title from the govern-
ment.

The jury also found that the defendant Emigh did not
have notice of the written agreement when or before he
purchased an interest in the Emancipation mining claim.

The court, in its final decree, found that the contract in

writing was made as returned by the jury, but nevertheless found the equity of the cause with the defendants Emigh and Jackson, and dismissed the plaintiffs' complaints, without prejudice, however, to the trial of the issue at law as joined between the parties.

On the last trial of the trespass case, which occurred some time after the trial of the action for specific performance, the court directed a verdict in favor of defendants. The ejectment proceeding shared substantially the same fate.

The plaintiffs in error, Coffey, Smith and Blackburn, assign for error, *inter alia,* the action of the court below in disregarding their rights under the written agreement.

Messrs. Geo. S. Adams, John W. Blackburn, Belford & Wikoff and J. Berkley, for plaintiffs in error.

Messrs. L. C. Rockwell and S. A. Giffin, for defendants in error.

Mr. Justice Elliott delivered the opinion of the court.

The three records before us are very voluminous. Nevertheless, as they have been argued and submitted together by counsel, and as the parties and the property involved are the same in each case, we shall endeavor to consider and dispose of them in one opinion.

It is conceded that the territory of the Emancipation lode crosses the territory of the Western Slope lode almost at right angles and that the veins therein are cross-veins. The Western Slope lode is the prior location. Hence, the owners of the Western Slope are entitled to the mineral within the space of intersection of the two veins; but, in the absence of contract, the owners of the Emancipation are entitled to a right of way through the territory of the Western Slope location for the purpose of working their own vein, and are entitled to all the ore found therein except within the space of intersection. Such is the law as declared in *Branagan v. Dulaney,* 8 Colo. 408; *Lee v. Stahl,* 9 Colo. 208. See, also, the latter case in 13 Colo. 174.

It is further conceded that the acts of defendants complained of were committed upon the conflicting territory — that is, within the limits where the two locations cross each other, and within that portion of such limits which by the written agreement was to be owned and possessed as a part of the Western Slope location, though not within the space of actual intersection of the two veins; hence the question whether or not defendants were guilty of trespass depends upon whether or not the written agreement and the conduct of the parties thereunder, as set forth in the replication, controlled the rights of the parties in reference to the conflicting territory.

In January, 1880, when the alleged written agreement was entered into for the division of the territory embraced within the conflicting locations, the law was unsettled as to the rights of owners of cross-veins within the limits of conflicting locations. The case of *Branagan v. Dulaney* was not decided until 1885, and up to this time we are not aware of any decision by the supreme court of the United States construing the act of congress relating to the precise question now under consideration. R. S. U. S. § 2336.

We see no reason to doubt that the dispute between the owners of the respective mining claims as to their several rights within the space of the conflicting locations was caused by an honest difference of opinion in relation thereto, and that all parties acted in good faith in endeavoring to settle the same. There was, therefore, sufficient consideration to support the voluntary written agreement for the amicable settlement of such controversy. The law upholds and favors *bona fide* settlements based upon such considerations. 1 Pars. Cont. 438; 2 Pom. Eq. Jur. § 850.

In *Hoge v. Hoge*, 1 Watts, 216, 217, Chief Justice Gibson says: "The compromise of a doubtful title, when procured without such deceit as would vitiate any other contract, concludes the parties, though ignorant of the extent of their rights."

Plaintiffs having alleged that they had taken and contin-

ued in possession of their several portions of the disputed territory in pursuance of said written agreement, were entitled to prove the same in support of their claim of lawful possession, and for the purpose of showing that the entry by defendants without license was unlawful. It was, therefore, error to strike from the replication in the trespass suit the averments respecting the written agreement, and the conduct of the parties in reference thereto.

In the action for specific performance, the court and jury concurred in finding that the owners of the conflicting mining locations did enter into the contract in writing to divide the disputed territory, and to exchange deeds in fulfillment of such contract as soon as they should respectively acquire the government title. This finding corresponds substantially with the allegations of the complaint, and is abundantly sustained by the evidence.

The defendant Jackson was a party to the written agreement, and joined in its execution; hence, as to him, no question of notice can arise. The jury, however, found that defendant Emigh did not have notice of the written agreement when he purchased an interest in the Emancipation lode; but the decree of the court does not in express terms confirm such finding. Whether Emigh had such notice or not before purchasing, the evidence is strong and convincing that after acquiring such interest he repeatedly recognized the title of the Western Slope owners under the written agreement. It is clearly established, also, that the owners of the Western Slope lode, immediately upon the execution of the written agreement, and in pursuance thereof, entered into possession of that part of the Emancipation territory so acquired by them, and proceeded to sink a shaft at the fifty-foot division line designated in the written agreement, erected a shaft-house there, and thereafter continued their possession and working of that portion of the vein as a part of their own mining claim. Emigh himself testifies that he saw this shaft at the time he visited the property with a view of purchasing, and other witnesses testi-

fied that the shaft-house was in plain sight, and that the dump and evidence of fresh workings were observable there at the time. The court, therefore, should have found, notwithstanding the verdict of the jury, that plaintiffs were entitled to the premises thus acquired and occupied. Their possession under the written agreement, and the circumstances attending the same, were sufficient to put Emigh upon inquiry as to their rights in the premises. Besides, there is positive testimony from a witness, apparently disinterested, that before Emigh purchased he was expressly informed of plaintiffs' rights according to the terms of the written agreement. Emigh denies this, but his subsequent conduct indicates that he was not without satisfactory information upon the subject. Wade, Notice, § 10 *et seq.;* *Filmore v. Reithman,* 6 Colo. 120; *Doyle v. Teas,* 4 Scam. 202.

The contention that there were *laches* on the part of the plaintiffs in not asking for a specific performance of the contract at an earlier date is without force. Plaintiffs were and had been in the undisturbed possession and enjoyment of the premises acquired by them under the written agreement for more than five years after the agreement was entered into, and until about one month prior to the commencement of this litigation. The agreement had thus been executed for all practical purposes, and, instead of plaintiffs' title becoming stale by delay, it was ripening by the continued acquiescence of defendants. See *Great West Min. Co. v. Woodmas of Alston Min. Co.* 14 Colo. 90. In *Bush v. Stanley,* 122 Ill. 418, it is said: " The doctrine of *laches* can only be invoked by one in possession against one out of possession." That there may have been secret, under-ground trespasses upon plaintiffs' territory thus acquired does not militate against the correctness of these views. Nothing appears to have been wanting to complete the execution of the written agreement except the formality of passing the title-deeds.

As to the alleged variance between the allegations and

the proof on the part of plaintiffs it is only necessary to say that in view of the loss of the written agreement and the resort to parol evidence the proof is remarkably clear, strong and harmonious, and, in general, corresponds with the substance of the issue as presented by the pleadings. This is all the law requires. It is true some testimony is contradictory of, and some is variant from, the terms of the written agreement as alleged, but such testimony is by no means sufficient to warrant an appellate court in setting aside the finding of the jury, confirmed as it is by the judgment of the trial court. *Railroad Co. v. Lindsay*, 4 Wall. 650; *Crary v. Smith*, 2 N. Y. 60.

The failure of the trial court to confirm the finding of the jury as to want of notice to defendant Emigh, together with the dismissal of the complaint " without prejudice to the trial of the issue of law as joined between the parties," indicates, as we think, that the trial court considered that plaintiffs had established their right to the property in controversy as against defendants, but that the case was not a proper one for a decree of specific performance, and hence remitted them to their action for damages.

The written agreement, as alleged and substantially proved, seems to us to be certain, fair, reasonable and just. The parties had entered into and continued in possession of the property in pursuance of its terms for a long time. Both parties are still able to carry out the contract. Plaintiffs are willing so to do. No good reason has been shown why defendants should not be required to perform on their part. 1 Story, Eq. Jur. §§ 747–751; 3 Pom. Eq. Jur. § 1407; *Crary v. Smith, supra.*

It is unnecessary to consider in detail the third record, which for convenience we have called the " action of ejectment." Its separation from the trespass case was an irregularity. In the course of this litigation there has been an unnecessary multiplication of suits, and in each case the pleadings have been excessively voluminous. The provisions of our code of procedure in reference to the uniting of

causes of action are very liberal. The statements of fact in pleadings are required to be " in ordinary and concise language without unnecessary repetition." *In all cases, equitable relief may be granted, and legal and equitable defenses may, if separately and properly stated, be set forth in the answer.* Code, §§ 49, 56, 59, 70; *Bank v. Newton*, 13 Colo. 245.

The three judgments under consideration are accordingly reversed and remanded for further proceedings in accordance with this opinion. As the multiplied records and increased costs of the so-called ejectment proceeding were occasioned by the action of plaintiffs in the court below, the costs thereof are adjudged against them.

*Reversed.*