NICHOLS, APPELLANT, v. MCINTOSH ET AL., APPELLEES.

1. DIVERSION IN COMMON WITHOUT MERGER.

The same irrigating ditch may have two or more priorities belonging to
the same or different parties; and two or more persons may divert
water through the same head gate for the irrigation of their sev-
eral farms without any surrender, joinder, or merger of their re-
spective priorities.

2. CONSTITUTIONAL RIGHTS PROTECTED.

An adjudication of priorities under the irrigation acts of 1879 and 1881
will not, without due process of law, deprive a person of his consti-
tutional or vested rights—such as prior rights to the use of water;
nor will such rights be affected by the lapse of time so long as they
are not actually denied, abridged, or interfered with by the enforce-
ment of the decree entered in such proceedings.

3. ABANDONMENT OF WATER RIGHTS.

A person may abandon an irrigating ditch without abandoning his
water rights; such rights may be abandoned by nonuser; but, so
long as the appropriator continues the use of such rights without
any unreasonable voluntary cessation, an abandonment will not be
presumed against him.

4. PARTIES TO PROCEEDINGS.

Any person whose rights may be affected by an adjudication of priori-
ties is entitled to be made a party.

5. PRIORITY OF RIGHT LIMITED.

No one is entitled to have a priority adjudged for more water than he
has actually appropriated, nor for more than he actually needs.
Priority of right is limited by each of these considerations.

*Appeal from the District Court of Boulder County.*

APPLICATION for an adjudication of priorities of right to the
use of water for irrigation, and for an injunction to restrain
water commissioner from shutting down head gates of certain
irrigating ditches. Preliminary injunction granted. Upon
final hearing judgment rendered dissolving the injunction and
dismissing plaintiff's application. Plaintiff appeals.

Mr. B. L. CARR, Mr. F. P. SECOR and Mr. ALPHEUS
WRIGHT, for appellant.

Mr. R. H. WHITELEY, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

Appellant George W. Nichols was plaintiff below. Appellee McIntosh was water commissioner of Irrigation District No. 6, and one of the defendants below. The evidence shows that at the commencement of this action plaintiff was the owner and in possession of a certain quarter section of land located in Boulder county, Colorado.

Nichols first settled upon the land in 1859, before the same was surveyed by the United States government, and before the territory of Colorado was organized; he remained in possession, by himself and his tenants, continuously thereafter for about thirty years, and until the trial of this cause in September, 1889; it was undisputed at the trial that he had received and still held a patent for the premises from the United States.

North Boulder creek, a natural stream of water, enters plaintiff's land from the west, and running in an easterly course divides the land, leaving about fifty acres to the north and about one hundred and ten acres to the south of said stream.

Plaintiff claims that in 1859 he constructed an irrigating ditch by which he diverted water from said stream to irrigate his land upon the north side of Boulder creek; and that in 1861 he constructed another irrigating ditch to irrigate his lands upon the south side of said stream. There was evidence that the head gates of these ditches were changed several times in order to better secure the diversion of water; and that in 1878 Nichols and others constructed a ditch on the south side of Boulder creek, having its head gate farther up the stream than the former south-side Nichols ditch; and that thereafter Nichols received his supply of water through the new ditch for the irrigation of his south-side lands, his share of the water being turned from the new ditch into his old south-side ditch some distance from the natural stream.

**1.** Upon this phase of the case the trial court held, *inter alia :*

"That two independent ditches claiming priority of water rights as against each other as ditches cannot have the same identical head gate or starting point."

This was error. The law is well settled in this state that a person who has lawfully appropriated water to beneficial use may change the point of diversion without losing his right of priority. A change of water way does not necessarily involve a change of water rights. In acquiring a priority of right to the use of water for purposes of irrigation, the mode of diversion is unimportant; and such rights are entitled to be protected irrespective of the mode of diversion. The same irrigating ditch may have two or more priorities belonging to the same party or to different parties. *Thomas v. Guiraud,* 6 Colo. 530 ; *Rominger v. Squires,* 9 Colo. 328 ; *Fuller v. Swan River Co.,* 12 Colo. 12 ; *Farmers High Line C. & R. Co. v. Southworth,* 13 Colo. 111 ; Mills An. Stats. § 2408.

The statute of this state provides for the conveyance of water by two or more parties through the same irrigating ditch under certain circumstances. Session Laws 1881, page 164. This statute indicates the general policy of our irrigation laws. Even without such a statute, persons voluntarily uniting their irrigating ditches would not necessarily forfeit any priorities which they might have theretofore respectively acquired. It was doubtless a matter of mutual convenience for Nichols and his associates to convey the water for the use of their respective farms for a certain distance through the same irrigating ditch ; and in so doing they were entitled to have their respective rights protected the same as if the water had been conveyed through separate ditches, or through ditches having separate and independent head gates. *Tripp v. Overocker,* 7 Colo. 72 ; *Downing v. More,* 12 Colo. 316 ; *Sand Creek L. I. Co. v. Davis,* 17 Colo. 326 ; *Rominger v. Squires, supra.*

It appears that in 1882 an adjudication was had of appropriations of water for irrigation in district No. 6, which dis-

trict includes Boulder creek and its tributaries. This adjudication was under the acts of 1879 and 1881. By decree of the court it was adjudged that the new ditch, called the " Wellman ditch," constructed by plaintiff and others, was entitled to a priority as of May 1, 1878. Plaintiff testifies that being absent from the state for many years before and after 1882, he was not personally served with process, and that he did not have any notice of the proceedings to adjudicate priorities under said act. So far as this record discloses, plaintiff did not appear in the proceeding, nor did any one appear for him to procure an adjudication of the priorities of right to the water appropriated through either of his original ditches; nor was any separate priority adjudged of the water received by him through the Wellman ditch.

Upon evidence of this nature the conclusion of the trial court was to the effect that Nichols was barred from having any priority of right to the use of water adjudged in his favor in this proceeding; but that he must rely upon the Wellman ditch for water to irrigate his south-side lands, and that his south-side priority was merged in the priority of the Wellman ditch. The doctrines of *jointure, merger, res judicata, laches*, including certain limitation statutes, are relied on to support these conclusions. See §§ 26 and 35, Act of 1881, pp. 156, 160.

It is true, as we have seen, that Nichols and others arranged to divert water for the irrigation of their several farms through a single head gate, and so carried the water for a certain distance through a ditch constructed and used by them in common. But these facts, without other pertinent evidence, do not justify the conclusion that Nichols agreed to surrender his separate priority; nor is the inference to be indulged that he intended so to do. As was said in *Rominger v. Squires, supra:* " It is not reasonable to suppose that priority of right to water, where water is scarce, or likely to become so, will be lightly sacrificed or surrendered by its owner. Nor should the owner of such a right be held

to have surrendered it or merged it, except upon reasonably clear and satisfactory evidence."

2. Was the adjudication of priorities as made in district No. 6, in 1882, *res judicata* as to plaintiff's rights? An affirmative answer would, in our opinion, give undue effect to the irrigation acts of 1879 and 1881, and the adjudications of priorities thereunder. In *Farmers High Line Co. v. Southworth, supra,* it was said of these irrigation acts: " They are in the nature of police regulations to secure the orderly distribution of water for irrigation purposes, and to this end they provide a system of procedure for determining the priority of rights as between the carriers." And again: " The authority of the general assembly to enact laws regulating the distribution of water to actual appropriators, *provided they do not substantially affect constitutional or vested rights,* is undoubted." See 13 Colo., pp. 134, 137.

In the same case it was held by the majority of the court that, " the appropriations of water by consumers who receive the same through the same ditch do not necessarily relate to the same time; but, on the contrary, such consumers may have different priorities of right." Thus, in effect, the prorating statute, so called (Gen. Stats. 1883, § 1722), was upon constitutional grounds limited in its operation.

As early as 1880, litigation arose respecting the entry of decrees under the irrigation act of 1879, without service of process or notice upon the parties whose water rights were to be affected by such decrees. One of the district judges refused to enter such decrees, except upon a compliance with certain rules which he had formulated requiring process or notice. The controversy reaching this court, the late Chief Justice Beck, speaking for the court, declared: " Property rights in water are as important, as valuable, and as extensive as the broad acres to be fertilized thereby." The rules requiring process or notice were upheld. Since that time this court has repeatedly held that priorities of right to the use of water are property rights; such is the settled doctrine in this state. See *Union Colony v. Elliott, District Judge,* 5 Colo.

381 ; *Strickler v. Colo. Springs,* 16 Colo. 61, and cases there cited; also, *Wyatt v. Larimer and Weld Irrigation Co.,* 18 Colo. 298.

Property rights in water consist not alone in the amount of the appropriation, but, also, in the *priority* of the appropriation. It often happens that the chief value of an appropriation consists in its *priority* over other appropriations from the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right. For example, in the case at bar : If, as a matter of fact, Nichols made his original appropriation on the south side as early as 1861, as he claims, or in 1864, as claimed by others, the adjudication fixing his priority as of the date of the Wellman ditch (May 1, 1878) subjects his right to all intervening appropriations made between the former dates and the latter, and thus greatly lessens its value. A priority of right to the use of water being property, is protected by our constitution so that no person can be deprived of it without " due process of law." Const. Colo., Art. 2, § 25 ; Cooley's Const. Lim. (6th ed.) 431, *et seq.*

Conceding that plaintiff, as he testifies, made his appropriations of water in the early 'sixties, and continuously thereafter applied the same to purposes of irrigation until 1888, when the water commissioner shut off his supply, he was entitled, as we have heretofore indicated, to have such prior water rights protected, notwithstanding he had changed the place and mode of diversion, and notwithstanding the statute providing for the adjudication of priorities and the decrees entered thereunder in 1882. It is true, section 26 of the act of 1881, *supra,* limits *the review or re-argument of such decrees* to the period of two years from their entry; section 35, also, provides that after the lapse of four years from such entry *all parties whose interests are thereby affected shall be deemed to have acquiesced in the same,* etc. But these sections do not apply to an original proceeding for an adjudication of priorities by a party who has never had his day in court. A re-argument implies a previous argument, or at least a

previous opportunity for argument. No one's interests can properly be said to be affected by a decree in a proceeding of this kind to which he is not a party. Plaintiff not having been served with process,—his possession and enjoyment of the water rights in controversy not having been interrupted, disturbed, or in any way challenged from the date of his appropriation until just before the commencement of this proceeding,—his interests cannot be held to have been affected by the lapse of time prescribed by the statute. It has been aptly said : " The doctrine of *laches* can only be invoked by one in possession against one out of possession." See *Coffey v. Emigh*, 15 Colo. 191, and authorities there cited. The prior rights of a party not served with process or notice in proceedings to adjudicate priorities cannot be held to be affected by the lapse of time, so long as such rights are not actually denied, abridged, or interfered with, by the enforcement of the decree entered in such proceedings. It cannot properly be said that a person has *slept upon his rights* unless he has for a considerable period of time actually acquiesced in being deprived of them.

3. The trial court further found :

" The two old Nichols ditches are abandoned and no longer used as ditches; plaintiff has substituted other ditches for them, and is and has been for many years using his water rights through the said substituted ditches; and therefore he cannot call for an adjudication of priority for the two old ditches as if they were still existing operative ditches."

It may be that plaintiff had abandoned a portion of his original ditches, yet it would seem, from this finding, that he had *not* abandoned his water rights. A distinction must be observed between the abandonment of *an irrigating ditch* and the abandonment of *the right to the use of water for irrigation.* Water rights may be abandoned by nonuser ; but so long as the appropriator continues the use of such rights without any unreasonable voluntary cessation, an abandonment of his water rights will not be presumed against him. *Sieber v. Frink*, 7 Colo. 153, *et seq.*

As a new trial may be had in this proceeding, we have endeavored not to intimate any decisive opinion concerning the facts of the case, nor to discuss the evidence, except so far as has been necessary in expressing our views upon the law governing the rights of the parties.

4. In case of further proceedings, any person or persons whose rights may be affected by the adjudication of plaintiff's priorities as claimed by him are entitled to be made parties. Plaintiff should be allowed to amend his petition so as to secure an adjudication of his priorities through any substituted ditch, instead of his original ditches, if he desires so to do; and the date and amount of his priorities on either side of the stream respectively must be subject to such proof as he can make, the same as if he had been served with process or had appeared in the original proceeding for the adjudication of such priorities.

5. While it may be proper to inquire as to the amount of water necessary to irrigate a certain amount of land, as was done on the previous trial, nevertheless, in fixing priorities between contesting claimants, it must be borne in mind that the amount actually appropriated and the time of its appropriation are also important. In other words, no one is entitled to have a priority adjudged for more water than he has actually appropriated, nor for more than he actually needs. His priority of right must be limited by each of these considerations. Proof of present need is not of itself proof of prior appropriation; and *vice versa*.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*