### ROCKWELL, INTERVENOR, v. COFFEY ET AL.

1. PRACTICE IN CIVIL ACTIONS—INTERVENTION.

As a general rule, a party will not be allowed to intervene between the trial and the rendition of judgment.   Good practice requires the petition to be filed before the trial is entered upon.

2. JUDGMENT AND EXECUTION LIENS.

The lien of a judgment and execution attaches only to the judgment debtor's real interest in the property.

3. ESTOPPEL.

Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel.

*Appeal from the District Court of Boulder County.*

Mr. L. C. ROCKWELL, *pro se.*

Messrs. BELFORD & GALLOWAY, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Lewis C. Rockwell now seeks to intervene in a certain action heretofore decided by this court, in which the judgment of the district court of Boulder county was reversed and the cause remanded to that court for further proceedings in accordance with the opinion filed. See *Coffey et al. v. Emigh et al.*, 15 Colo. 184.

The decision in *Coffey v. Emigh, supra*, covered three cases between the same parties relating to the same subject-matter. The particular case in which this intervention is filed is referred to in that opinion as "an action for specific performance." The facts as they were then disclosed by the record will be found fully set forth in the statement preceding that opinion.

The premises with reference to which a specific performance of a written agreement was then sought by the plaintiffs, Coffey et al., are the same as those to which Intervenor Rockwell now claims title, and for this reason a further statement of the result of the previous suit is necessary to a proper understanding and determination of the present controversy. The written agreement, a specific performance of the terms of which was then asked, provided, among other things, that the defendants, Emigh et al., should execute to plaintiffs proper deeds of conveyance to a certain portion of the Emancipation Lode, to wit, the first fifty feet north of the south line of the Western Slope Lode.

The court, in passing upon the issues then before it, said of this written agreement: It "seems to us to be certain, fair, reasonable and just. The parties had entered into and continued in possession of the property in pursuance of its terms for a long time. Both parties are still able to carry out the contract. Plaintiffs are willing so to do. No good reason has been shown why defendants should not be required to perform on their part." And the judgment was reversed, and the cause remanded for further proceedings in accordance with the opinion.

It was supposed at the time that when the case reached the lower court a motion for judgment would be made and sustained, but for some cause not appearing in the record, it was allowed to slumber in the lower court for upwards of two years, and until after Rockwell had filed his petition of intervention, when plaintiff moved for judgment in accordance with the former opinion of this court. This motion was not sustained at the time, apparently on account of Rockwell's petition. Plaintiff thereupon sought to compel by *mandamus* the entry of judgment in the district court in his favor. This remedy was refused by this court as not available under the circumstances. See *People, etc., v. District Court*, 18 Colo. 500.

The petition of intervenor, after reciting the history of the litigation between the plaintiffs and defendants with reference to the premises in conflict between the Western Slope and the Emancipation Lodes, down to and including the judgments of reversal rendered by this court, alleges that thereafter certain executions issued out of this court at the instance of the plaintiffs and against the defendants.

It is then alleged that said executions were directed to the sheriff of Boulder county and were by that officer levied upon "all the right, title and interest which the defendants had in and to the Emancipation Lode, including, to wit, the identical property and premises mentioned in said plaintiffs' amended complaint," and for which defendants had obligated themselves by the written agreement to execute a conveyance to plaintiffs, a specific performance of which said agreement this court had held that plaintiffs were of right entitled to.

It is further alleged that after due notice the sheriff sold the property at public sale to N. K. Smith, one of the parties to the former suits, and that before the statutory time for redemption had expired, C. C. Emigh confessed judgment in favor of A. L. Emigh, both the Emighs also being parties to the record in the main action. Rockwell, the attorney of record for the defendants in those cases, also obtained a judgment by confession against Jackson. It is also alleged that

A. L. Emigh and L. C. Rockwell redeemed the property from the execution sale and received the sheriff's deed therefor. Rockwell, having subsequently obtained a conveyance of the interest from A. L. Emigh, is the sole plaintiff named in the intervention proceedings.

As a general rule, a party will not be allowed to intervene between the trial and the rendition of a judgment. Good practice requires the petition to be filed before the trial is entered upon, and had the plaintiffs in the main suit exercised proper diligence in following up their victory obtained in this court, Rockwell would have been too late with his intervention, as a new trial was not ordered. *Hocker v. Kelley et al.*, 14 Cal. 165; *Henry, Lee & Co. v. The Cass County Mill & Elevator Company*, 42 Iowa, 33. But assuming for the purposes of the case that, by reason of the laches of the plaintiffs, this petition of intervention came in time to warrant consideration upon its merits, and·it is clear that the judgment of the district court sustaining a demurrer to the pleadings and dismissing the petition must be sustained, for the reason that it does not state facts sufficient to entitle Rockwell to intervene. The rule is well established that the lien of a judgment and execution attaches only to the judgment debtor's real interest in the property. Freeman, in his excellent work on Executions, says, at page 1128: "The purchaser at an execution sale takes his title subject to such liens, easements and equities, as it was subject to in the hands of the defendant in execution, unless he can show that he is a purchaser in good faith and without any notice, actual or constructive, of the existence of such lien, easement, or equity."

The sheriff was only authorized to levy upon the right, title and interest of the defendants in the property, and it appears from the allegations of this petition that this is all he attempted to levy upon or assumed to sell by virtue of the executions.

Moreover, all parties in any way connected with the sale as purchasers or redemptioners were connected with the suits, either as parties or attorney, from its inception, and are

chargeable with notice of the exact condition of the title as declared by the court in its former opinion.

Under that decision the defendants held simply the naked legal title to that portion of the Emancipation Lode now in dispute, and this was held subject to a certain written agreement confirmed by this court requiring them to execute to the plaintiffs, as holders of the equitable title, a full and complete conveyance of such legal title. The purchaser at the execution sale acquired only the interest in the Emancipation Lode held by the defendants; in other words, they purchased subject to the terms of the written agreement as construed by this court.

It is contended in this case that the plaintiffs are estopped from claiming the property in dispute because it is alleged in the petition, and consequently is a conceded fact as against the demurrer, that plaintiffs received the consideration paid upon the sale under execution, but this argument is without force in view of the fact that the defendants had title to other portions of the Emancipation Lode and not to the territory in dispute, and it must be assumed that these other interests only were the ones for which the consideration was paid and accepted.

In the oral argument something was predicated by intervenor upon the alleged peculiar wording of these executions, but the executions are not before us and the allegations of the complaint cannot be strengthened thereby. The presumption is that the cause stated in the petition of intervenor is as favorable to him as the facts will justify.

The allegations are not sufficient to authorize an intervention, and for this reason the demurrer was properly sustained and the petition dismissed. The judgment of the district court will accordingly be affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT did not participate in the hearing and decision of this case.

UPON REHEARING.

PER CURIAM. In the petition for rehearing it is urged that, "assuming that Emigh and Jackson had no interest whatsoever in the property sold, but that it actually belonged to the execution creditors, who levied upon it and caused it to be sold, that as to the intervenor it was wholly immaterial whether the property belonged to the execution creditors or the execution debtors, he purchased whatever title all parties had in the property." This is the only matter relied upon for a rehearing, although it is stated in the petition in different forms.

It is claimed that the facts averred constitute an estoppel. As shown in the principal opinion, the levy was made only upon the right, title and interest of the defendants in the Emancipation Lode. By a decree of this court rendered prior to this levy, that part of the lode now claimed by intervenor was awarded to the owners of the Western Slope Lode under the compromise agreement, and a conveyance decreed accordingly. As we endeavored to show in the former opinion, Smith bought only the right of the execution debtors to the Emancipation Lode. His purchase included all the territory in conflict between the Emancipation and Western Slope Lodes, except that portion covered by the decree, of the the existence of which decree parties had notice. It thus appears that one of the essential elements of an estoppel by conduct is entirely wanting in this case, the purchaser being fully advised of the true state of the title. " Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel." *Brant v. Virginia Coal & Iron Co. et al.*, 93 U. S. 326; *Patterson v. Hitchcock*, 3 Colo. 533; *Griffith v. Wright*, 6 Colo. 248.

The argument of appellants based upon the averment of the petition that " the sheriff of said Boulder county subsequently levied said executions upon all the right, title and interest which the defendants had in and to the Emancipation Lode, including, to wit, the identical property and premises mentioned in said plaintiffs' amended complaint and here-

inbefore described as a portion of the Western Slope Lode," was fully considered and reviewed in our former opinion, although the averment was not incorporated into the opinion.

In fact, all the allegations of the pleading have been carefully weighed. The pleading does not show that the execution creditors desired the sheriff to levy upon more than the interest of the execution debtors in the property, or that the sheriff assumed to or did sell other than such interest, and this is the only interest acquired by Rockwell. His interest in the Emancipation Lode is therefore subject to the right of the owners of the Western Slope Lode to a conveyance, as provided by the terms of the written agreement as construed by this court in *Coffey et al. v. Emigh et al.*, 15 Colo. 184. A rehearing will be denied.

*Rehearing denied.*