OF THE

# COURT OF APPEALS

OF THE

## STATE OF COLORADO.

SEPTEMBER TERM, 1896.

### NICHOLS v. LANTZ.

1. ABANDONMENT—WATER RIGHTS.
Abandonment is a matter of intention and operates instantly.
2. SAME.
To constitute an abandonment there must be a concurrence of an inten-
tion to abandon with an actual relinquishment of the property.
3. SAME.
It is *held*, under the facts stated, that an appropriator of water lost his
right thereto by abandonment.

*Error to the District Court of Garfield County.*

Mr. H. T. SALE, for plaintiff in error.

Mr. ED. T. TAYLOR, for defendant in error.

REED, P. J., delivered the opinion of the court.

The court would be warranted in refusing to consider this
case for failure to file an abstract as required by the rules.

What is called an abstract is, at best, but a partial, partisan index, and we are compelled to entirely disregard it and resort to the record. What an abstract should contain to assist the court should readily be apparent to counsel,—a fair, clear, and unbiased synopsis of all that pertained to the trial, and, where a fact in evidence is relied upon, or a ruling or order of the court, the entire evidence pertaining, and the ruling of the court, should be incorporated.

In order to economize labor and printing, it is false economy to print pages of worthless matter, useless to the court. The court is overwhelmed with business, and without compliance with the rule and assistance from counsel it becomes impossible to do the work. It is not only the duty of the appellant to present a proper transcript for the examination of the case, but of appellee to see that it is done, to protect the judgment obtained, and, if the abstract is insufficient, call the attention of the court to the fact or supplement the abstract.

The controversy appears to be a suit in equity in regard to the water of a spring used for irrigating. On the 15th day of April, 1885, one Thomas Kelly settled on land which, prior to that time, was a part of the public domain. On the 9th day of June, 1885, Kelly filed upon the land under the preëmption laws of the United States and occupied it until November 9, 1889. The spring in controversy was about one and a half miles from the land. The water from the spring came down a gulch across the land and discharged into the Roaring Fork river. It is alleged that on April 20, 1885, Kelly *located* the water of the spring and commenced the construction of a ditch to convey the water to his land ; that Kelly prosecuted the work with diligence, diverted and appropriated all the water. On the 11th day of May, 1889, by a decree of the district court, Kelly's right to the water in controversy was established, and he decreed to be the sole owner of the water and the ditch. That he had the sole and exclusive use of the water until November 11, 1889, except as stated hereafter. That on November 3, 1889, Kelly sold and transferred his possessory right to the land, and also to

the water right to one M. H. Brennan, who never occupied, but appears to have bought for the benefit and use of his brother, Eugene Brennan. The rights of Kelly to the land were conveyed to M. H. Brennan by quitclaim deed, that a conveyance of the water right was not embraced in the deed, it having been deemed unnecessary. That after such sale of his possessory right, Kelly delivered possession of land and water, and shortly after left the state, remaining away three years. Eugene Brennan occupied the property and used the water, and, on the 13th day of May, 1890, filed a preëmption claim upon the land purchased of Kelly, and on the 5th of September following entered and acquired title. That during his entire occupancy he had the sole use and control of all the water, and that his right was undisputed, except by the grantor Kelly, as stated hereafter. In the fall of 1889 M. H. Brennan died. On October 1, 1889, Eugene Brennan sold and conveyed the land to Newton Lantz, defendant in error, and also by deed conveyed to Lantz the Kelly ditch and his right to water from the spring. That Lantz had the sole, undisputed and unquestioned use of all the water until the 16th of May, 1893. Lantz also claimed title to the water through deed from Joseph and John Smith about the 10th day of May, 1893, who took title from one Vance, who claimed to have appropriated the water in 1884. Plaintiff Nichols erected a dam in the gulch to convey the water on to a tract of unoccupied government land and diverted the water, afterwards occupied the land and continued the diversion of water and threatened to continue to divert and use the water. That on November 1, 1892, plaintiff Nichols purchased from Kelly the water right in question, Kelly claiming to be the owner and to have never parted with the title.

This suit was brought by defendant in error to establish title to the water and restrain the diversion. Decree for defendant Lantz, and a writ of error to this court. Many other collateral facts might be stated in regard to the supposed rights of parties, etc., but, in my view of the case, are

unimportant; I think the statement sufficient for a proper understanding of the case.

The spring was on unoccupied government land. The ditch dug by Kelly to convey water to his holding was over land of the same kind. Kelly was the occupant of the land and had filed upon it some years before, but never acquired a title. He sold and by quitclaim deed conveyed to M. H. Brennan his possessory right and improvements and relinquished all right to acquire a title. The water right was not embraced in the deed. The undisputed evidence establishes the fact that the purchase from Kelly embraced the water right and the ditch, and possession was given to Brennan by Kelly at the time possession of the land changed. The witness Dinkle, who drew the deed from Kelly to Brennan, testified to the sale and purchase of the water right, and that it was not embraced in the deed because he advised that it was unnecessary.

I do not deem it necessary to decide whether or not a deed was necessary to pass the right to the water from Kelly to Brennan, or whether the entire right passed by change of possession. Nor do I deem it necessary to determine—the deed from Kelly having been made to M. H. Brennan—whether Eugene Brennan legally succeeded to the rights of M. H. Brennan. Eugene Brennan took the possession of both land and water, retained it, acquired the title to the land from the government, sold and conveyed it, the ditch and water right to Lantz.

If there was any question in regard to the rights of Eugene as against his deceased brother, M. H. Brennan, they were rights which must have been asserted by the heirs of the latter, and in which plaintiff Nichols had no interest, and no matter what the equities of the heirs were, he could not avail himself of them to establish a title.

Kelly, for a cash consideration of $800, on November 3, 1889, sold all his possessory rights to land and water and delivered the possession. There was no reservation of the water right. Left the country for three years, leaving Bren-

nans in the actual possession and use of the water as owners.. During that time he asserted no claim. Late in year 1892 Kelly returned. Not having conveyed the water right to Brennan by deed, he was advised that he still had it, and he made a sale and conveyance for $75.00. That the water right was embraced in the sale to the Brennans, and that they possessed, occupied and used it until the sale to Lantz, and he afterwards, is placed beyond question by the evidence. That Kelly, after investing the Brennans with his possessory title and possession, abandoned the property, is clearly established.

"Abandonment is a matter of intention and operates in-. stanter. Where a miner gives up his claim and goes away without any intention of repossessing it, an abandonment takes place, and it is open to location by the first comer. No subsequent sale by the former locator, after other rights have intervened, will convey any right or title." *Derry v. Ross*, 5 Colo. 295; *Dorr v. Hammond*, 7 Colo. 79; *Sieber v. Frink*, 7 Colo. 148; *Nichols v. McIntosh*, 19 Colo. 22.

· "Abandonment is defined to be the relinquishment or surrender of rights or property by one person to · another." Bouvier's Law Dict.

"Abandonment includes both the intention to abandon and the external act by which the intention is carried into effect." Web. Dict.

· "To constitute an abandonment there must be the concurrence of the intention to abandon and the actual relinquishment of the property." *Judson v. Malloy*, 40 Cal. 299.

"Abandonment of land is necessarily a question of intention, but that intention may be gathered from all the acts of the party alleged to have abandoned." *Davis v. Perley*, 30 Cal. 630.

Tested by the definitions and legal decisions, the fact of the abandonment is clearly established by the evidence, the *intention and actual abandonment* following such intention.

· After his return in November, 1892, Kelly was estopped to assert title, and could convey no title by deed or other-

wise. He had nothing to convey, and plaintiff in error took nothing by the conveyance. Having purchased with full knowledge of all the fact, his claim does not appeal very strongly to a court of equity.

The decree of the district court will be affirmed.

*Affirmed.*