## FISCHER ET AL. v. HANNA ET AL.

1. FINAL JUDGMENT.

The finality of a judgment is not dependent upon the character of the fund for distribution.

2. DISMISSAL OF APPEAL NOT AN AFFIRMANCE, WHEN.

The code provision that the dismissal of an appeal without prejudice shall operate as an affirmance of the judgment unless another appeal or supersedeas be taken or allowed within thirty days after such dismissal, does not apply where the appeal was dismissed for want of jurisdiction.

3. PRACTICE—NOTICE OF MOTION.

When a motion is not acted upon at the time designated in the notice, but goes over indefinitely, it is error to act upon it in the absence of the adverse party without further notice.

4. INTERVENTION.

An intervention is permissible only in an action pending and before judgment.

5. SAME.

Without service of a copy of the petition in intervention upon the parties to the action against whom anything is demanded, the court is without jurisdiction, unless the parties voluntarily appear thereto.

6. PRACTICE—DEMURRERS.

Demurrers to pleadings must be disposed of before proceeding to trial upon the merits.

7. MECHANICS' LIENS.

The superintendence of the construction of a building is work within the meaning of the mechanic's lien act, for which the superintendent may be entitled to a lien.

8. ALLEGATIONS AND PROOF.

The allegations and proof must correspond.

9. PRACTICE—SUBSTITUTION OF PARTIES.

When the fact of a change of interest is brought to the court's attention

at any time before decree, a substitution of parties should be allowed.

*Error to the District Court of Arapahoe County.*

IN MARCH, 1889, John J. Riethman leased certain lots in the city of Denver to William Lockhart Smith for the term of five years. In June of the same year he executed a supplemental lease extending the time five years, making the term ten years. On the 17th of August of the same year it is alleged that Smith had erected a theatre building upon the lots and applied to The Colorado Savings Bank and obtained a loan of $10,600, gave his note, executed also by one Charles M. F. Bush as surety, and, to secure the payment of said note, assigned to John A. Clough, trustee, all his leasehold interest in the property; that in December of the same year (1889) Smith sold and conveyed to The Metropolitan Theatre Company all interest in the leasehold property, theatre building, fixtures and furniture, subject to the existing lien of The Colorado Savings Bank. On the 31st day of December, 1889, in order to obtain an extension of time for the payment of the money due the Savings Bank, the Theatre Company assumed to pay the debt due from Smith to the bank, and executed notes falling due from January 1, 1892, to November 1, 1894, aggregating $10,600, with interest at seven per cent. In each of said notes it was provided that if the Theatre Company allowed the taxes or any rates or assessments to become delinquent all the notes should at once become due and payable. To secure the payment of the notes, the Theatre Company executed a deed of trust to Thomas B. Stuart, trustee, upon the property, real and personal, and the lease. It was stipulated by the Theatre Company that it would pay Riethman all ground rent that should fall due, that it would insure the theatre building in favor of the Savings Bank for $20,000, that it would pay all taxes against the building, and that, in case it became necessary to foreclose the deed of trust in court, the court should tax a reasonable attorney's fee, which was also to become a lien

upon the property. In order to protect its security the Savings Bank on December 31, 1889, advanced the Theatre Company $1,500, to relieve the property from liens and charges; paid the taxes for the year 1889; paid taxes upon the property for the year 1890, amounting $466.50; and paid insurance, $525; ground rent to Riethman, $1,575, and other bills, making the aggregate debt $19,429.53. Default was made in the payment of all the notes and the advances.

On March 28, 1890, the bank commenced suit to foreclose, and also prayed judgment against Smith, Bush and the Theatre Company. On January 1, 1890, the Theatre Company executed and delivered to Ferdinand C. Fisher a trust deed upon all of its property, subject to the prior rights of the plaintiff, to secure claims held by him and others against the company. On March 28, 1890, E. R. Cooper was appointed receiver of The Metropolitan Theatre Company. No service of summons was had upon Smith,—the officer returned that he could not be found. On May 7, 1890, defaults were entered against the parties served. On the same day the court entered a decree of foreclosure against the property and a judgment against the defendants served for $17,884.96. On the 29th of September, 1890, the court made an order allowing John B. Hanna to intervene. The part of the petition of Hanna as intervenor necessary to be considered is as follows:

"That about April 11, 1889, Smith entered into an agreement with the petitioner for the latter to superintend the erection of the building for Smith, in pursuance of which he, the intervenor, entered upon the employment as superintendent, continuing therein till the completion of the building, April 12, 1890; that Smith agreed to give intervenor for services the usual rate or per cent of the total cost of the building which prevails in the city of Denver, which were then and now five per cent of the total cost; that the total cost was $86,000 and the amount due petitioner, $4,300, no part of which was paid."

"Prays that he be admitted as a party intervenor; that he

have judgment against Smith (only) for $4,300 and interest from May 12, 1890, and for foreclosure of his lien against the leasehold interest of Smith and as against the interest of each and all parties herein, and derived from said Smith and to the theatre building and lots; that his lien be declared superior to the lien of the plaintiff and the defendants, and each of them, etc."

On December 20, 1890, the parties entered into an agreement whereby E. R. Cooper, receiver, was authorized to sell the property of The Metropolitan Theatre Company for $30,000, to H. A. W. Tabor, taking his notes for $25,000, at four months, with interest at ten per cent, the balance to be paid in cash. An order of court was entered giving effect to the agreement. Then followed a paper filed by Fischer, in which occurs the following:

"That the company had purchased and is now owner of each and every claim of every beneficiary in said trust deed, and petitioner, as trustee under said trust deed, is the representative only of the said Lumber Company, it being at the present time the sole beneficiary under the said trust deed; that said Lumber Company hath also purchased by assignment and transfer the claim of the plaintiff, allowed under the order and decree of the court, and is entitled to receive the full amount and decreed to be due the plaintiff, together with interest thereon."

On December 17, 1891, an order was entered discharging the receiver and transferring to the Lumber Company the money, notes, etc., and the Lumber Company executed a bond of indemnity in the sum of $35,000.

On January 16, 1894, intervenor served upon the said E. R. Cooper (former receiver) a notice that on January 16, 1894, or as soon thereafter as counsel could be heard, said intervenor would apply to the court to have said cause set for hearing upon the merits. On May 23, 1894, an order was entered setting the cause for hearing June 16th.

On June 11, 1894, Fischer and the bank demurred to Hanna's petition of intervention, and alleged as grounds of

demurrer: "That it does not appear by the said petition when the said petitioner rendered the last services in petition mentioned, nor that the services rendered by the intervenor were such services as, under the law, entitled him to a lien upon said property, nor that the compensation provided for by the supposed agreement between intervenor and said Smith was reasonably worth that claimed by intervenor; nor that the supposed lien notice was sufficient in law or that it contained any statement of the total amount claimed by intervenor; nor the credits thereon; nor the balance due on account of alleged services, nor that the alleged lien notice was in any respect a sufficient lien notice under the provisions of the statute."

On June 21, 1894, an order was entered of default of Smith and the Theatre Company. No service had been had on either.

June 25, 1894, notice served on The Colorado Savings Bank that on the 27th of June, 1894, The Chicago Lumber Company would apply to the court to be substituted as plaintiff in the above entitled cause, in the place and stead of The Colorado Savings Bank, the said company having succeeded to the rights of the said bank. The motion was served upon the intervenor.

On June 27, 1894, The Chicago Lumber Company presented and filed its petition to be substituted as plaintiff in place of the Savings Bank. After stating its legal right to be substituted as the party in interest and assignee of the claims of the bank, the petition proceeds to review all the proceedings in this case and point out supposed errors and irregularities in the conduct of the case by which, it was alleged, it had been prejudiced, and by which both it and the bank had been prevented from resisting the claim of Hanna, the intervenor. The petition was quite lengthy; was verified by the Lumber Company's secretary. On June 27th, also, was filed the following motion, as a part of the former motion or to sustain it:

"On this day comes Ferdinand C. Fischer, sued herein

under the name of Frederick C. Fischer, and moves the court to set aside and annul the hearing and all the proceedings had at the hearing of the claim of John B. Hanna, intervenor, which hearing was had before the court on June 21, 1894, and to grant to him, as trustee herein, and as one of the defendants aforesaid, a hearing upon all questions of law and of fact which may be properly presented as a defense to said intervenor's claim, according to law, and for grounds of this motion doth state and declare the following reasons, viz.: "

The alleged "reasons" embrace four printed pages of statements of alleged irregularities, mixed with argument in support of the motion, which is followed by an affidavit of Fischer of verification covering six printed pages, reviewing the whole proceeding, and pointing out supposed errors of the court.

On the same day, to resist the application, the intervenor caused to be filed the counter affidavits of his counsel, H. A. Lindsley and Charles M. Bice, showing the regularity of the entire proceeding, and that the court had not erred, such affidavits covering over six printed pages. These were followed by affidavits of two of the counsel of the bank and the Lumber Company, insisting upon the irregularities and errors, and covering eleven printed pages.

Counsel for plaintiff then applied to the court to have the demurrers to the petition of the intervenor set for hearing. The application was denied and an exception taken. On the same date (June 30th) the motion and petition of Fischer for a rehearing of the case, and to set aside the proceedings theretofore had, was denied, "*because it came too late,*" and an exception taken on the same date. On June 30th the motion of the Lumber Company to be substituted as plaintiff in place of the bank was denied, and an exception taken. And on the same date (June 30th) the following decree was entered as of the date of June 21st:

"At this day the above entitled cause coming on regularly for trial on the merits, pursuant to the order of court on the

petition of intervention of John B. Hanna, * * * whereupon the court hears the evidence in behalf of the intervenor, the said John B. Hanna and Charles F. M. Bush, testifying in support of the intervenor's petition, and no testimony having been offered contrarywise, and no one appearing in behalf of any other party to this proceeding, after due argument by counsel, and the court being fully advised in the premises, doth find :

" That it appears from the report of the receiver herein, and from the various petitions and orders of court in this cause filed, that The Colorado Savings Bank, plaintiff herein, long since sold and transferred its entire demand to The Chicago Lumber Company, a corporation not a party to this proceeding, and that the said F. C. Fischer, T. B. Stuart, John A. Clough, J. J. Riethman, A. H. Andrews & Co., John B. Hanna, assignee, and the said plaintiff at this time have no interest whatever in this suit, and have no right to contest or resist the intervenor's petition herein ; and the court doth further find that the defendant, William Lockhart Smith, as lessee of the lots described in the petition of intervention, employed the intervenor to superintend the construction of the Metropolitan Theatre building on said lots, at and for the agreed price of 5 per cent. of the total cost of construction ; that the intervenor entered upon such employment and superintended the construction of said theatre building continuously, from about April 11, 1889, to April 12, 1890 ; that the total cost of constructing said building was $86,000.00, and that the intervenor is entitled, under his contract, as compensation for his labors aforesaid, to the sum of $4,300.00, together with interest thereon at the rate of 8 per cent. per annum, from the 12th day of May, 1890, to this date ; that the intervenor has received no part of such compensation ; that on May 6, 1890, the intervenor subscribed and verified his lien statement, under the mechanics' lien statute of 1883, wherein and whereby the said intervenor claimed a lien on said building and leasehold interest aforesaid, said lien statement complying with the law in every

respect, and said lien statement was duly recorded in the office of the clerk and recorder of Arapahoe county, on May 12, 1890, and that intervenor's petition herein was filed on September 29, 1890; and the court doth further find and determine that each and every allegation of the intervenor's petition is true, and that the intervenor is entitled to a lien on said building and leasehold interest, as set forth in the complaint and in the intervenor's petition, and is entitled to have said lien established and foreclosed for the amount aforesaid; and the court doth further find that it was heretofore agreed by all the parties to this proceeding that the receiver herein might sell said theatre building and leasehold interest for the sum of thirty thousand dollars, net of all expenses incident thereto, and that all the parties to this proceeding who should hereafter be adjudged entitled to a lien on said building and leasehold interest, should in lieu thereof, be entitled to a lien on said $30,000.00, the proceeds of said sale, and said agreement was sanctioned by a decree of court entered herein; and in pursuance of said decree, the receiver sold the same in strict accordance with said agreement and decree; it is therefore ordered, adjudged and decreed that the said John B. Hanna do have and recover of and from the said William Lockhart Smith, the sum of $5,713.66, and that the right of the said John B. Hanna to a lien on said building and leasehold interest, described in his petition is declared and established in the amount aforesaid; that out of the fund arising from the sale of the said building aforesaid, the intervenor is entitled to satisfaction of the foregoing judgment, and the receiver is hereby ordered to pay forthwith to said John B. Hanna $5,713.66; and it is further ordered and adjudged that the intervenor's lien on the proceeds of the said sale of said building and leasehold interest is hereby established and declared; that in the decrees heretofore entered in this cause, the priority of the claim of this intervenor was not determined, and it is now adjudged that inasmuch as the intervenor commenced work long prior to the date of all other claims heretofore reduced to a decree

herein, the judgment of the intervenor herein is adjudged prior to all claims heretofore adjudicated herein, and is entitled to satisfaction out of the $30,000.00 fund before any other claimant thereto. And it is further ordered and adjudged that the intervenor recover his costs herein to be taxed."

On September 5th following, the following order was entered:

"At this day comes John B. Hanna, intervenor, * * * and it appearing to the court herein that the records of this court in the above entitled cause, of date June 21, 1894, are silent in respect to the intervenor's motion to strike from the files the demurrers of F. C. Fischer and The Colorado Savings Bank, and as to the court's ruling on said motion and on said demurrers.

"Now therefore, it is ordered and adjudged that said record of date June 21, 1894, be amended by adding thereto the following order, to-wit: 'At this day the intervenor, John B. Hanna, appearing by his attorneys, Whitford & Lindsley and Charles M. Bice, and F. C. Fischer and The Colorado Savings Bank, by Benedict & Phelps, their attorneys, and the cause being regularly called for trial on the merits of the intervenor's petition, the intervenor moved to strike from the files the demurrers of F. C. Fischer and The Colorado Savings Bank, and after argument of counsel upon such motion and as to the sufficiency of the demurrers, and the court being fully advised in the premises, the motion of the intervenor to strike from the files the demurrers aforesaid, is denied, and the demurrers are, by the court overruled; and the said F. C. Fischer and The Colorado Savings Bank filing no answer or other pleading herein, and asking for no time in respect thereto, the trial upon the intervenor's petition is proceeded with.' "

Messrs. BENEDICT & PHELPS and Mr. HORACE PHELPS, for plaintiffs in error.

Mr. CLAY B. WHITFORD, Mr. H. A. LINDSLEY and Mr. C. M. BICE, for defendants in error.

REED, P. J., delivered the opinion of the court.

Motion was made in this court by appellees, supported by briefs and argument, to dismiss the suit. Appellants filed counter briefs and arguments, and the contention over the motion became almost as formidable as that in the main case upon the merits. This court, finding that the determination of the motion on the grounds presented involved an examination nearly as exhaustive as would be necessary upon the final hearing, denied such motion, and allowed the questions involved to be presented with the other questions involved.

I. The first contention is that the judgment was not final, but interlocutory. The reasoning of counsel in support of such contention is that the fund was a trust fund in the hands of the custodian for the payment of different claims until the fund was exhausted, and that there were two or three other claims of like character, contending for the right to participate in such fund, whose claims had not been adjudicated and determined, and that such adjudications, should they occur, might compel the modification of the decree in this case. This is as I understand the contention of counsel, and, if I am not correct, I fail to comprehend the grounds.

We can find no authority, nor is any cited, where it is held that the finality of a judgment is dependent upon the character of the fund for distribution, whether a trust fund or remaining in the hands of the debtor, as long as it can be reached and applied by the court.

We are not informed who the parties are whose judgments might ultimately require a modification of the decree, nor the basis of such claims. Two suits of the same character, to enforce liens, those of John B. Hanna and Andrews & Co., had been adjudicated, gone through the supreme court, and the claimants defeated.

It is shown that the building in the construction of which the supposed lien originated was completed April 18, 1890. In the latter part of same year, or in January, 1891, the property was converted into money, and went into the hands

of the trustee.   On September 25, 1890, the suit of the intervenor was commenced by filing the complaint, where it remained without prosecution until January 15, 1894, over three years.   If there were others with legitimate claims and more dilatory, who had taken no steps to enforce claims, they should pay the penalty of their negligence.   But we fail to see in what respect the decree lacked the elements of finality. Certainly the possibility of some claim subsequently arising could not affect it any more than a judgment against a debtor should be regarded interlocutory, because he owed other debts that had not been adjudicated.   He was given an absolute decree for a liquidated amount, and it was given precedence over the only decree and judgment adjudicated prior to it. The matter was an absolute finality—*res adjudicata*—according to the authorities, unless the trial court had granted a new trial, or the judgment had been reversed by a superior court.

II. The second contention for dismissal is based upon what is denominated as a " plea in bar." It is peculiar, ingenious, and certainly novel.

I can best state the contention in the language of counsel of defendants in error: " We assert that the plaintiffs in error waived their rights to a review here (1) by filing a bill of review in the court below, and (2) by not suing out the writ of error within thirty days after the dismissal of their appeal to the supreme court." The legal principle invoked is stated as follows : " All the authorities agree—and it must be so in the nature of things that a bill of review is, in effect, an appellate proceeding, and that by adopting that method, all others are waived, and the only right of appeal thereafter existing is from the judgment rendered on such bill of review. A party by claiming one remedy waives the other."

Several authorities are cited in support of the proposition. This is in regard to the petition or paper filed by Fischer on June 27, 1894, in which he asked the court to set aside and annul the former proceedings in the suit of the intervenor and allow him to defend.   The petition was denied as of

June 21st, because it " comes too late," and on the same date the petition of the Lumber Company to be substituted as plaintiff in the main suit in place of the bank was denied.

The paper is designated by counsel as a " bill of review." I cannot so regard it. It is certainly not a proceeding in chancery, and, according to the definitions, lacks every essential element of a bill of review. I am glad some name is given to it. It seemed to me a legal *nondescript*, but upon careful study is found to be nearer a motion and petition for a new trial and an assignment of errors than anything else, and must be so regarded. It is said to be in the nature of an appellate proceeding. I can hardly agree with this, when addressed to the same court that tried the case. It is said, also, to be a waiver of all errors at law, but instead of being a waiver it seems a very spirited indictment, asserting the errors and judicial crimes alleged to have been committed. But what it is or was appears to be of very little significance in view of the fact that the court refused to substitute the Lumber Company as plaintiff, and the bank retained the position; hence the paper was not filed by any party to the case, but an outsider, a volunteer, and certainly could not operate as a waiver, by the plaintiff bank, of errors that intervened. After its denial by the court, it was speedily dismissed by the petitioner, so it is said; but I have not learned *what* was *dismissed*. To dismiss a motion after a judgment denying it appears rather an unnecessary proceeding and a novel experiment.

III. It is urged that the failure to sue out a writ of error within thirty days after the dismissal of the appeal by the supreme court was, under section 397 of the code, sufficient ground for the dismissal of the case in this court. The appeal in the supreme court was dismissed without prejudice for want of jurisdiction. We have always regarded the section in question as only applicable to the suing out of a writ of error from the same court to which the appeal was taken, and, the appeal having been taken to the wrong court and dismissed for want of jurisdiction, that the time in which the

writ of error could be taken out in the proper court was reg-
ulated by the general statute fixing the limitation. The
motion to dismiss the writ of error will be denied.

The grounds relied upon by plaintiffs in error for reversal
are, first, the action of the court in advancing the case and
setting it for final hearing *ex parte*. The case had lain dor-
mant, without any attempt on the part of the intervenor to
prosecute, for three and one third years. On the 29th of
September, 1890, an order of court was made allowing Hanna
to intervene. On January 16, 1894, intervenor served notice
that on that date, " or as soon thereafter as counsel could be
heard," the intervenor would apply to the court to have the
case set for hearing on the merits. The motion remained un-
disposed of, and no further notice was given. On May 23rd
the court set the case for hearing on June 16th. The order
appears to have been *ex parte;* without the knowledge or par-
ticipation of opposing counsel. The only paper on file was
the petition of intervention and complaint of the intervenor.
No rule had been entered requiring the adverse party to
plead, and no steps taken to put the case at issue, and no
default taken for failure to plead. On June 11th the bank
and Fischer filed demurrers to intervenor's complaint. On
June 21st the court proceeded to a hearing of the case upon
the merits, with the demurrers on file undisposed of. On
the 27th of June counsel for plaintiffs in error moved the
court to set the demurrers for hearing, which motion was
denied, and, on June 30th, a decree was entered as of the
21st, in which the court states that it had heard evidence
in support of intervenor's claim, " *and no testimony having
been offered contrary, and no one appearing in behalf of any
other party,*" etc., proceeds to decree for the intervenor.

The notice of January 16th not having been acted upon
and having gone over indefinitely, it was error of the court
to act upon it without further notice, and in the absence of
the adverse party, and set the cause for hearing on the merits
on May 23d. *Mallan v. Higenbotham*, 10 Colo. 264.

One important and controlling fact does not appear to

have been called to the attention of the court, and he seems to have entirely overlooked sections 22 and 24 of the Civil Code, which are as follows:

"Any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action between other persons, either in joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant."

"*The court shall determine upon the intervention at the same time that the action is decided*, subject to the power of the court to determine the order and mode of trial of the several issues. If the claim of the party intervening is not sustained, he shall pay all costs incurred by the intervention."

At the time that the petition to intervene was allowed and filed, there was no suit in which there could be an intervention. The adjudication had been concluded, and a final decree entered nearly five months previously. In order to an intervention there must be a suit pending, and before judgment, by section 23 of the code, the petition to intervene may be filed either before or after issue joined in the principal suit, and by section 24 the intervention must be determined *at the same time* the principal suit is decided.

In *Rockwell v. Coffey*, 20 Colo. 397, it is stated: "As a general rule, a party will not be allowed to intervene *between the trial and the rendition of judgment.*" There certainly can be no intervention months after the rendition of a final judgment. There is no suit in which the petitioner can intervene. The statute is peremptory: "The court shall determine upon the intervention at the same time the action is decided." The court has no discretion.

Our statute is that of California, and differs materially from those of most of the states. It comes from the Civil Law and Code Napoleon, and was taken from Louisiana. It

is a proceeding unknown to courts of common law and equity in Great Britain and the United States. Speaking in regard to this particular code it is said, in Pom. on Rem., sec. 416: "We see that intervening rises at once into a proceeding of great importance. It may be resorted to in any and all civil actions, *and at every stage in the action prior to the commencement of the trial.*" And in sec. 423: "*The application* (to intervene) *must be made before judgment if made at all.*"

In *Carswell v. Neville,* 12 How. Pr. Rep. 445, it was said, on the application of one Dorsey to intervene: "Should Dorsey be made a defendant, it would open up the judgment and stay proceedings on it. He is too late for such a favor. The case in 3rd Code Rep. 172, relied upon by Dorsey's counsel, is where the application *was made before* judgment. In this case Dorsey attached as early as February, 1853, and the plaintiff in this suit recovered judgment in August, 1854." The case was decided December, 1854.

It is clear that had the question been raised and presented, it must have been held that the court had no jurisdiction. Whether the objection was waived by the defendants, or they were precluded from making it by the action of the court, we cannot determine. As the cause must be remanded, attention is called to it; also to the fact that if, as asserted by the defendants, that copies of the petition to intervene were not served upon the defendants, if such was the fact the court was without jurisdiction for want of service. The proceeding by intervention is purely statutory, and the provisions of the statute must be strictly and literally followed. It is not contended that any rule to plead was obtained or entered, and that the demurrers were not voluntarily filed. Without a rule to plead and a default entered of record, *ex parte* proceedings are erroneous. In regard to proceedings by intervention, and that they are governed by the same rules of practice as original suits, see Civil Code, secs. 17 and 23.

"The right to intervene is purely statutory, and the stat-

ute prescribes the mode of exercising it. An intervention is made by the complaint setting forth the grounds upon which the intervention rests, filed by leave of the court, and served upon the parties to the action, who may answer or demur to it as if it were an original complaint." *Chase v. Evoy*, 58 Cal. 355.

After voluntary delay of the intervenor for three and one third years, it is hard to find any exigency or necessity to advance the case and railroad it through in defiance of rules of practice. It is not claimed by appellee that there was any service of the copy of the petition of intervention upon the parties to the original suit, and counsel for appellant under oath state there was no such service. The code provides that service shall be had by service of the copy of the petition of intervention. To confer jurisdiction, such service is equally as necessary as service of a summons or any other writ in ordinary suits. Failing to make service as provided by law, the court was without jurisdiction, but for the voluntary appearance and demurrers of the parties. During the entire proceedings and the entry of the decree on June 30th, no judgment appears upon the demurrers. On September 5th, after an appeal was allowed, bond filed, and the case was in the supreme court, an attempt was made to correct or add to the record of the case; the motion on which it was based being as follows:

"Wherefore, the intervenor moves the court that the record aforesaid be corrected so as to show that at the time the said cause was called for trial upon its merits, the intervenor moved to strike the demurrers aforesaid, and also asked that the demurrers be overruled; that the said motion to strike was overruled, and that the demurrers were then and there overruled; and that the plaintiff and the said Fischer interposed no answer or other pleading and that they did not ask so to do. The intervenor further asks that the foregoing record entries be made as of the date of the trial of the intervenor's petition herein." Which motion was granted.

The motion and amendment are peculiar. No date is given

when the alleged proceedings were had, nor is there an affirmative statement that any such orders were made and omitted by the clerk, nor was any showing made. The language of the motion upon which the alleged correction was made is: " *That at the time the said cause was called for trial upon its merits the intervenor moved to strike,*" etc. There is a striking discrepancy between this statement and the bill of exceptions that should not be allowed to pass without notice. At the commencement of the trial the intervenor was sworn, " but the said Fischer and said plaintiff, by counsel, objected to the introduction of any testimony because demurrers were pending and no issue of fact was formed, no rule to plead to the intervention had ever been taken, and the only issue before the court was the issue of law voluntarily tendered by the demurrers ; which objections the court overruled, to which ruling said Fischer and said plaintiff each severally duly excepted." When the case was upon trial and the testimony of the intervenor was being taken, " Mr. Phelps, on behalf of said Colorado Savings Bank and F. C. Fischer, here excepted to the ruling of the court in allowing the introduction of any testimony in support of this claim, because the case is not at issue in that there are demurrers pending and undetermined on behalf of said Colorado Savings Bank and F. C. Fischer ; and also moved the court to strike out all the testimony given by said J. B. Hanna upon the same grounds. * * * The Court.—My judgment is that the parties are guilty of such laches that there is no appearance here to prevent the intervenor from proving up the lien claim. To which ruling of the court, said Colorado Savings Bank and F. C. Fischer, by counsel, then and there duly excepted." And at the conclusion of testimony for the intervenor: " Mr. Phelps, on behalf of The Colorado Savings Bank and F. C. Fischer, then moved the court to strike out all the testimony of this witness, on the ground that there is no issue on which to predicate it, there being demurrers pending and undetermined in this matter ; that no rule was ever entered requiring the parties to this suit to plead to the petition of intervention of

J. B. Hanna, and the evidence is, therefore, incompetent and inadmissible. Which motion was by the court denied. To which ruling of the court, said Colorado Savings Bank and F. C. Fischer, by counsel, then and there each severally duly excepted." It is hard to reconcile these matters of record with the language of the motion and order, which is: " At the time *the same was called* for trial the intervenor moved to strike from the files two demurrers directed against his petition. * * * *That at the time said motion was interposed, the same was argued by counsel for the respective parties as well also the sufficiency of the demurrers, and the court* * * * *denied the intervenor's motion to strike and also overruled both of said demurrers;"* and it is then stated that the parties not having filed an answer, nor asked for time, the court ordered counsel to proceed with the trial of facts. It is evident from the above entries in the bill of exceptions, the affidavits of counsel and the post-mortem attempt to correct the record, that at the time the trial was had there had been no judgment upon the demurrers.

To proceed to trial upon the merits without a judgment upon the demurrers was a grave error, and if the judgment was one overruling the demurrers, time should have been given to the answer. *Gibson v. Smith*, 1 Colo. 7; *De Walt v. Hartzell*, 7 Colo. 601; *Corson v. Neatheny*, 9 Colo. 214; *McDonald v. Hallicy*, 1 Colo. App. 303; *Huse v. Moore*, 20 Cal. 115; *Lower Kings, etc., Co. v. Kings River, etc., Co.*, 67 Cal. 577; *Ballance v. Loomis*, 22 Ill. 84; *Hays v. Heatherly*, 36 W. Va. 622.

It is contended by appellant that the allegations in the petition do not bring the intervenor within the provisions of the statute as entitled to a lien. The statute provides a lien for " whoever shall do any work. * * * For the purposes of this act the term ' work ' shall be deemed to include labor of every kind, whether skilled or unskilled." I see no good reason why the superintendence of the construction of a building is not within the statute without a special designation. It is certainly work and labor. The same question arose in

*Taylor v. Gilsdorff*, 74 Ill. 354, and it was found that super-intendence was work under the statute. See, also, *Bank of Pennsylvania v. Gries*, 35 Pa. St. 423 ; *Mulligan v. Mulligan*, 18 La. Ann. 20 ; *Stryker v. Cassidy*, 76 N. Y. 50. The language of the statute is clear and comprehensive, and includes all persons who perform labor, whether skilled or unskilled. The person superintending the construction performs labor as truly as the mason who lays the wall.

It is urged that the complaint or petition of the intervenor was defective under the statute and insufficient. Whether it was deficient in substance we do not find it necessary to decide. That it was insufficient appeared clearly subsequently upon the trial, and the proof was so variant from the allegations of the complaint that no decree should have been entered. The petition alleges a single contract, by which it was agreed " that he should be paid the usual rate or per cent of the total cost of the building which prevails in the city of Denver, which were then and now five per cent of the total cost," that the cost was $86,000, the amount due the petitioner $4,300, no part of which was paid.

The testimony of the intervenor was :

" Q. State whether or not, at any time, you had a contract with him in reference to superintending the construction of that theatre building? A. I had a contract with him in 1889.

" Q. What were you to do? A. To erect and superintend the erection of the building.

" Q. Did you do that? A. Yes, sir.

" Q. What period did it cover? A. One year.

" Q. What time did you work? A. Day and night most all the time.

" Q. What were you to receive, if the compensation was agreed upon? A. *Mr. Smith agreed to give me a salary of $25.00 a week and a bonus of five per cent. on the construction.*

" Q. State if you know, what the cost of constructing that building was? A. It was $86,000.

" Q. How much were you entitled to under that contract? A. Forty-three hundred dollars.

"Q. Have you ever received any part or parts of that $4,300? A. No, sir; not any of that percentage.

"Q. State, in reference to this bonus contract, was it a separate and distinct contract from the wage contract? Did you have one or two contracts? A. I had one contract for $25.00 a week and a bonus.

"Q. Was the $25.00 contract entered into before the other one; what was it about? A. I was to receive that every week."

Redirect examination:

"Q. What was your first contract with Mr. Smith; what was it about? A. My first contract was to build the stage.

"Q. Was that what you came on from Detroit for? A. Yes, sir.

"Q. After you came here, was there a difficulty between the superintendent and the people who were building the theatre? A. Yes, sir; he had trouble with the stone contractor.

"Q. Did Mr. Smith apply to you to know if you would superintend the construction of the building? A. Yes, sir.

"Q. Was that the time he agreed to pay you in addition to the $25.00 per week, 5 per cent. on the cost of construction? A. Yes, sir.

"Q. The first contract you made was for $5.00 per day for constructing the stage? A. Yes, sir.

"Q. You came on from Detroit for that purpose alone? A. Yes, sir.

"Q. Subsequently, when he had trouble with his contractor, he employed you to superintend the construction of the building, also? A. Yes, sir.

"Q. It was then he agreed to pay you 5 per cent. on the total cost of construction? A. Yes, sir."

The evidence establishes a contract for $25.00 a week to superintend the construction of the stage; a subsequent contract of $25.00 per week and a bonus of 5 per cent upon the cost of the building for the superintendence of the construction of the building. He testified: "*I had one contract for*

*$25.00 a week and a bonus."* He afterwards testified: " *My first contract was to build the stage."* " Q. Was that what you came on from Detroit for? A. Yes, sir." Afterwards Mr. Smith had trouble with the superintendent. The intervenor was employed in his place. He testified he commenced work under the contract April 12th, and continued for a year. How long after his employment the new contract was made is not shown. An alleged contract, only embracing one item of it, is no compliance with the statute. The contract alleged was an employment for a compensation of 5 per cent only in the cost of construction; the contract proved was for $25.00, payable weekly, and 5 per cent bonus. The statute required the exact contract of employment to be set out, the aggregate of earnings, and credits for all moneys received. According to the petition the amount earned under the contract was $5,600, with credits of $1,300, while the intervenor alleged nothing had been paid upon the contract.

The evidence was very meagre and unsatisfactory. It is alleged in the petition " that by the contract Smith agreed to give intervenor for services the usual rate or per cent of the total cost of the building which prevails in the city of Denver." Then follows : " Which were then and now five per cent of the total cost of the building." It will be observed that no proof whatever was made to establish the usual percentage in the city of Denver. All the evidence given was in regard to a contract of 5 per cent, and that rested upon the allegation, without proof. If 5 per cent was the usual prevailing compensation of a superintendent, the presumption is that it was the entire compensation, not a bonus in addition to a fixed amount which the party had agreed to take as full compensation. These matters were unexplained. He had agreed to take for his services $25.00 per week, had come on from Detroit to work for that compensation; then claims as a bonus, in addition to that, that he was to receive for the year $4,300, making $107.70 per week. The fair presumption is that if a new contract was

made, the old one was abrogated, and the $25.00 per week paid should have been deducted, or it should have been shown that his services were worth $25.00 a week more than those of other supervising architects.

Why the court should have found it necessary to adopt the course pursued, and put defendants in default, is unexplained, with demurrers on file undetermined—no rule entered requiring them to plead, and no default entered of record, and thus preclude all defense. It appears to have been arbitrary and extraordinary, and certainly so great a departure from the well settled rules of practice as to vitiate the judgment. The only reason given by the court appears frivolous and trifling. It occurred upon the trial: "Mr. Whitford on behalf of said intervenor objected to Mr. Phelps making objections here, because he did not represent any party in the case." The Court.—"*My judgment is that the parties are guilty of such laches, that there is no appearance here to prevent the intervenor from proving up the lien claim.*"

For nearly three and a half years the suit had lain dormant, without prosecution. On May 14, 1894, a motion was filed by the intervenor to advance the suit. On May 23d the court set the cause for trial June 16th, on the merits, regardless of issues and the rights of defendants. On June 21st he found for the intervenor, and on the 30th signed the decree as of the 21st. Allowing all the time between those dates as chargeable to the defendants, it only amounts to five weeks. The course pursued seems to be without a precedent. On June 27th a motion was filed to substitute the Lumber Company as plaintiff in place of the Savings Bank. Denied by the court "as too late." Why it was not filed at an earlier date does not appear, nor why it was too late. The decree was not made until June 30th, and no reason is given or necessity shown for antedating it as of the 21st. The fact of the transfer of the claim of the bank to the Lumber Company was stipulated by the parties December 20, 1890, and on the same date brought to the attention of the court by the sworn statement of Fischer. Under the provisions

and requirements of the statute it was the duty of the court to allow the substitution at any time before decree, when the fact of the change of interest was brought to its attention.

The judgment and decree will be reversed, and cause remanded for such further action in accordance with this opinion.

*Reversed.*